United States District Court
Northern District of Indiana
Hammond Division

| | |
|---|---|
| EDWARD B. DAWSON, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> COMMISIONER OF SOCIAL <br> SECURITY, <br><br> Defendant. | Civil Action No. 3:11–CV–379 JVB |

**OPINION and ORDER**

Plaintiff Edward B. Dawson seeks judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of Social Security, who denied his application for Social Security disability benefits and Supplemental Security Income disability benefits under the Social Security Act. Plaintiff prays that this court set aside the Decision of the Administrative Law Judge ("ALJ"), or in the alternative, that the matter be reversed and remanded for further proceedings. For the following reasons, the Court REMANDS the ALJ's decision for further consideration consistent with this opinion.

**A. Procedural Background**

On January 24, 2007, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging that he became disabled on October 1, 2006. (Pl.'s Opening Brief 1.) This claim was denied initially, and upon reconsideration. (*Id.*) On September 17, 2007, Plaintiff requested an administrative hearing. (*Id.*) He testified before ALJ James Norris on December

1

22, 2009. (*Id.*) The ALJ determined that Plaintiff was not disabled because jobs he could perform existed in significant numbers in the national economy. (R. 26.) On July 26, 2011, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Pl.'s Opening Brief 1) Plaintiff seeks judicial review of Defendant's denial of his claim. (*Id.*)

### B. Factual Record

#### (1) *Plaintiff's Background and Testimony*

Plaintiff was born November 30, 1960, and is a high school graduate. (R. 42) Plaintiff studied for eighteen months in an unaccredited vocational school as a dental technician. (*Id.*) Plaintiff is about 5'8' and weighs about 220 pounds. (R. 52.) Plaintiff was 45 years old at his onset disability date and is currently not working. (*Id.*) Plaintiff is single and lives alone. (R. 43.) On a typical day, he maintains his personal hygiene, eats something small, takes his medications, always locates nearby restrooms, and experiences difficulty sleeping. (R. 48.) Plaintiff requires the help of family and friends for some household chores but usually shops for groceries independently. (*Id.*)

At the hearing, Plaintiff testified that he stopped working in October 2006 when he "lost [his] bowels" at a customer's home. (R. 43.) Plaintiff further testified that this was not the first time a situation like this occurred and had been a problem since about a year after he was diagnosed with Crohn's. (*Id.*) Plaintiff stated that his "stools are diarrhea all the time" and claims he has never had a solid bowel movement. (R. 44.) Additionally, Plaintiff testified that he has eight to thirteen bowel movements each day. (*Id.*) Plaintiff reported that he experiences abdominal cramping, but taking Remicade has lessened his pain. (R. 45–46.) Plaintiff also

explained that certain movements such as bending will cause him to "lose [his] bowels." (R. 46–47.) Plaintiff further reported that he sometimes experiences stress, leg shakes, fatigue, and increased bowel movements. (R. 51.)

Plaintiff previously worked as a plumber, maintenance repair worker, electrical worker, and law service worker. (R. 53.) Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2010. (R. 18.)

**(2)** *Medical Evidence*

Dr. Nowak evaluated Plaintiff in 2003 but did not see him again until 2005 because Plaintiff was unable to keep appointments. (R. 201.) In February 2005, Dr. Nowak noted that Plaintiff had previously been treated for Crohn's disease and suggested that he continue taking Bentyl and Prednisone. (R. 201.) On November 22, 2006, Plaintiff reported increased diarrhea since September with bowel movements every forty-five minutes and some abdominal cramping. (R. 196.) At this time, Dr. Nowak diagnosed Crohn's disease and prescribed Pentasa. (R. 198.)

At the request of the Social Security Administration, Dr. Jean Perrin evaluated Plaintiff and diagnosed Crohn's disease, back and shoulder pain, and hypertension. (R. 296, 300.) On July 7, 2007, an examination showed edema and mild diffuse tenderness of Plaintiff's abdomen. (R. 313.) Plaintiff was again diagnosed with hypertension and Crohn's. (*Id.*) In November, Plaintiff was prescribed Prednisone and referred to a specialist. (R. 320.)

During May 2008, Dr. Jatinder Kaushal examined Plaintiff for abdominal pain and diarrhea and recommended that Plaintiff take Prednisone and Asacol. (R 388–389.) Dr. Michael Morelli began treating Plaintiff on June 18, 2008. (R. 334.) Dr. Morelli found diffuse tenderness

3

of the abdomen, diagnosed Crohn's disease involving small and large bowels, and noted significant fatigue and diarrhea. (R. 335.) Dr. Morelli prescribed Flagyl and Asacol. (*Id.*)

The following month, Plaintiff was seen in the emergency room for abdominal pain. (R. 414.) Plaintiff also underwent a colonoscopy that was normal aside from some inflammation and ulceration. (R. 332–333.)

During January 2009, Plaintiff underwent a CT scan of his chest that revealed hilar adenopathy.[1] (R. 339-340.) Plaintiff was prescribed Lomotil and Bentyl. (R. 340.) In May, Plaintiff had his first Remicade infusion. (R. 395.) The following month, an examination revealed tenderness of Plaintiff's abdomen and a weight of 209 pounds. (R. 398.)

In December 2009, Dr. Morelli completed a Gastrointestinal Disorders Impairment Questionnaire. (R. 405.) Clinical findings included bloody diarrhea, abdominal pain and cramping, and loose stools. (R. 406.) Dr. Morelli found no limitations in Plaintiff's ability to sit, stand, or walk, but did note that Plaintiff's symptoms periodically interfered with his attention and concentration. (R. 408.) Dr. Morelli concluded that Plaintiff could work eight hours per day. (*Id.*) Dr. Morelli further reported that Plaintiff required access to a bathroom six to eight times daily and would be away from his workstation for about fifteen minutes during each break. (R. 409–410.)

Plaintiff is about 5'8' and obese. (R. 23.) From his onset date to the present, Plaintiff's weight has fluctuated between 197 and 225 pounds. (*Id.*)

**(3)** *Testimony of Medical Expert*

At the hearing, Medical Expert ("ME") William Kelley testified that Plaintiff did not meet or equal a 20 C.F.R. § 404 listing. (R. 35.) The ME noted Plaintiff's history of Crohn's

---

[1] Enlargement or inflammation of the lung.

disease, hypertension, obesity, and myalgia. (R. 35.) The ME opined that Plaintiff could perform light work with the ability to take bathroom breaks as needed. (R. 36.) The ME further testified that, according to Plaintiff's 2009 Crohn's evaluation, Patient was treated with Remicade and occasionally treated with steroids. (R. 36.) The ME found no sign of dramatic weight loss, but admitted that Plaintiff's steroid treatment could cause weight gain. (R. 37–39) The ME further testified that it is not unreasonable for Plaintiff to need six to eight daily restroom breaks for fifteen minutes at a time. (R. 39–40.)

### (4) *Testimony of Vocational Expert*

At the hearing, the ALJ posed one hypothetical to Vocational Expert Gayle Corn. (R. 57.) First, the ALJ asked her to consider a forty-nine year old individual with a high school education and some vocational training limited to performing unskilled, light work. (R. 58.) According to the VE, such an individual would be able to work as a fast food worker, cashier, or machine operator. (R. 58.) The VE testified that her response was consistent with the Dictionary of Occupational Titles (DOT). (*Id*.) With regard to the listed jobs, the ALJ inquired about interruptions to attendance, task, and attention during a normal workday. (R. 59.) The VE responded that an employee could spend no more than ten percent of the workday off task. (*Id*.) The VE admitted, however, that this ten percent estimate was not listed in the DOT. (*Id*.)

### (5) *The Administrative Law Judge's Decision*

On February 18, 2010, the ALJ issued a decision unfavorable to Plaintiff. (R.13.) The ALJ found Plaintiff to have Crohn's disease, hypertension, and obesity. (R. 18.) The ALJ concluded that these impairments do not meet or medically equal the requirements of any impairments

listed in 20 C.F.R. § 404. (R. 18–19.) Ultimately, the ALJ determined that Plaintiff retains the Residual Functional Capacity to perform the full range of light work (R. 20.)

Plaintiff submits that the ALJ made three reversible errors: first, the ALJ failed to follow the treating physician rule; second, the ALJ improperly evaluated Plaintiff's credibility; third, the ALJ relied upon flawed Vocational Expert testimony.

### C. Standard of Review

This Court has the authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold an ALJ's decision if it is reached under the correct legal standard and supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court will not reconsider facts, re-weigh the evidence, resolve conflicts in the evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). This Court will, however, ensure that the ALJ built an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may access the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

### D. Disability Standard

To qualify for Disability Insurance Benefits or Supplemental Security Income, the claimant must establish that he suffers from a disability. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 CFR. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*See Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id*. The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

### E. Discussion

Using the five-step analysis developed by the Secretary, the ALJ denied Plaintiff's claim. Steps one and two are not at issue as the parties agree that Plaintiff is not currently employed, and the ALJ determined that Plaintiff does have three severe impairments: Crohn's disease, hypertension, and obesity. (R. 18.) Step four is also not at issue as both parties agree that Plaintiff is unable to perform his past relevant work. (R. 58.) Steps three and five are at issue. Plaintiff requests that this court set aside the ALJ's decision, or, in the alternative, that the matter be reversed and remanded for further proceedings.

**(1)** *The ALJ Properly Evaluated Plaintiff's Credibility*

7

Plaintiff argues that the ALJ, contrary to Social Security Ruling 96-7p and 20 C.F.R. § 404.1529, improperly dismissed Plaintiff's credibility. (Pl.'s Opening Brief at 10–11.) The ALJ's credibility finding is entitled to "considerable deference" and will not be disturbed unless it is "patently wrong." *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). To determine credibility, the ALJ must consider several factors including, but not limited to, the Plaintiff's daily activities, his level of pain or symptoms, aggravating factors, medication, treatment, and limitations. *See* 20 C.F.R. § 404.1529(c). Further, the ALJ must justify the credibility finding with specific reasons. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Here, Plaintiff argues that the ALJ wrongly concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not credible to the extent they are inconsistent with the above residual functional capacity [RFC]." (R. 21.) Specifically, Plaintiff claims the ALJ evaluated the consistency of his statements against the ALJ's own RFC finding, rather than the evidence of record. (Pl.'s Opening Brief 12.) Plaintiff further argues that to the extent the ALJ considered the record, his credibility determination was "patently wrong." (*Id.*)

The ALJ, however, based Plaintiff's credibility determination not only on his RFC, but also on the objective medical evidence and record as a whole. (R. 21–25.) For example, the ALJ considered the opinions of Dr. Kelley, Dr. Morelli, and Dr. Perrin. (R. 22–25.) Relying on these opinions, the ALJ observed that Plaintiff could perform his basic daily activities and that his medications provided some relief for his symptoms. (R. 24.) Therefore, the ALJ's credibility determination was neither "patently wrong" nor based solely on the RFC finding.

**(2)** *The ALJ Did Not Follow the Treating Physician Rule*

Plaintiff argues that the ALJ, contrary to *Campbell v. Astrue*, failed to follow the treating physician rule. 627 F.3d 299, 306, 308 (7th Cir. 2010). The Court of Appeals for the 7th Circuit explained in *Campbell* that a treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable laboratory and clinical testing and is consistent with the medical record and other substantial evidence. *Id*. Additionally, if an ALJ discounts a treating physician's opinion, he must provide good reason for doing so. *Id*.

Here, the ALJ gave significant weight to Plaintiff's treating physician, Dr. Morelli, on all but one assessment. Mindful of Social Security Ruling 96–2p[2], the ALJ evaluated Dr. Morelli's opinion in light of the medical record and all other substantial evidence. (R. 20–25.) Additionally, the ALJ considered Plaintiff's subjective complaints during Dr. Morelli's examinations. (R. 23.) During one examination, Dr. Morelli concluded that Plaintiff would need to use the restroom six to eight times daily for about fifteen minutes each time.[3] (R. 23.)

The ALJ determined that Dr. Morelli's conclusion was based on Plaintiff's subjective complaints and inconsistent with the medical record and other substantial evidence. (R. 23.) Specifically, the Plaintiff has been diagnosed as obese; the ALJ said this is "a stark contradiction to [Plaintiff's] purely subjective allegations of uncontrollable diarrhea." (R. 23.) The ME, however, testified that weight gain may be a side effect of Plaintiff's steroid treatment. (R. 38.) Additionally, the ME corroborated Dr. Morelli's report by testifying that nothing in the record makes Plaintiff's requirement of six to eight daily restroom breaks for fifteen minutes at a time unreasonable. (R. 39.) Therefore, while the ALJ gave significant weight to Dr. Morelli's opinion, he failed to provide good reason for not giving controlling weight to this single assessment

---

[2] A "treating source" opinion will be given controlling or significant weight if it is well supported by the objective medical record and is not inconsistent with the remaining substantial evidence in the record.

[3] Eight restroom breaks for 15 minutes each would add up to 2 hours, or 25% of an eight-hour work day.

regarding the crucial issue in this case: whether Plaintiff would be able to work at least ninety percent of an eight-hour workday. (R. 23.)

The ALJ must explain his conclusion by drawing a more logical relationship between the medical evidence in the record, Plaintiff's testimony, and the ALJ's conclusion that Plaintiff who was obese cannot suffer from uncontrollable diarrhea.

**(3)** *The ALJ's Reliance Upon VE Testimony Was Not Flawed*

Plaintiff argues that the ALJ relied upon flawed VE testimony because the posited hypothetical failed to include frequent restroom breaks. (Pl.'s Opening Brief 13.)

If the ALJ finds upon reconsideration that Plaintiff does not need to take as many bathroom breaks as he claims, then the hypothetical previously posed to the VE is proper. A valid hypothetical must "include all limitations supported by medical evidence in the record." *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Here, the ALJ's hypothetical did not include six to eight daily bathroom breaks because he concluded that this limitation is inconsistent with the medical record. The ALJ did, however, inquire as to how often an individual could be absent from his desk. (R. 58–59.) The VE responded no more than ten percent of the work day. (*Id.*)

On the other hand, if upon reconsideration the ALJ determines that Plaintiff does require six to eight daily restroom breaks, then the ALJ must pose a new hypothetical to the VE including the limitation of six to eight restroom breaks for fifteen minutes at a time.

**F. Conclusion**

The ALJ improperly concluded that Plaintiff is not disabled under Social Security Administration standards. Therefore, this Court REMANDS the ALJ's decision on the issue of whether Plaintiff requires six to eight daily restroom breaks.

SO ORDERED on March 27, 2013.

  s/ Joseph S. Van Bokkelen  
JOSEPH S. VAN BOKKELEN  
UNITED STATES DISTRICT JUDGE